[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10793
_____

D.C. Docket No. 5:09-cv-00331-RS-EMT

FLUOR INTERCONTINENTAL, INC.,

Plaintiff,

IAP WORLDWIDE SERVICES, INC.,
READINESS MANAGEMENT SUPPORT, L.C.,

Defendants,

IAP WORLDWIDE SERVICES, INC.,
READINESS MANAGEMENT SUPPORT, L.C.,

Third Party Plaintiffs-Appellees Cross Appellants,

versus

JOHNSON CONTROLS, INC.,

Third Party Defendant-Appellant Cross Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____
(August 14, 2013)

Before BARKETT, JORDAN, and RIPPLE,[*] Circuit Judges.

RIPPLE, Circuit Judge:

Johnson Controls, Inc. ("Johnson Controls") appeals from the district court's grant of summary judgment in favor of IAP Worldwide Services, Inc. ("IAP").[1]  The district court held that IAP was entitled to indemnification for losses it had incurred in connection with litigating, and eventually settling, a dispute on behalf its wholly-owned subsidiary, Readiness Management Support, L.C. ("RMS"), which IAP purchased from Johnson Controls.  The district court also held that the parties' indemnification agreement covered IAP's attorneys' fees and costs associated with settling the dispute for RMS.  Johnson Controls timely appealed,[2] and IAP filed a timely cross-appeal concerning the amount of attorneys' fees determined to be due under the parties' indemnification agreement.  For the reasons set forth in this opinion, we affirm in part and reverse in part the judgment of the district court.

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

[1] The district court's jurisdiction was predicated on 28 U.S.C. § 1332.  IAP is a Delaware corporation with its principal place of business in Florida.  Johnson Controls is a Wisconsin corporation with its principal place of business in Wisconsin.

[2] This court's jurisdiction is predicated on 28 U.S.C. § 1291.

2

# I

# BACKGROUND

Prior to March 30, 2005, RMS was a wholly-owned subsidiary of Johnson Controls Worldwide Services ("JCWS").  JCWS was a wholly-owned subsidiary of Johnson Controls.  In 2002, RMS contracted with the Air Force to build an expeditionary village in Qatar, called "Task 5076."  To complete Task 5076, RMS contracted with Fluor Intercontinental, Inc. ("Fluor") for some of the construction.  Fluor in turn subcontracted some of the work to a subcontractor that failed to perform adequately under the contract by delivering non-conforming materials.  Correcting the subcontractor's mistakes generated large cost overruns for Fluor.  Consequently, Fluor terminated its contract with the subcontractor.  RMS and Fluor then jointly petitioned the Air Force to obtain reimbursement of Fluor's cost overruns, and Fluor demanded reimbursement from RMS for amounts not reimbursed by the Air Force.

While negotiations with the Air Force were underway, Johnson Controls sold JCWS, RMS's parent, to IAP through a stock purchase agreement (the "SPA").  JCWS and IAP ultimately merged.  The SPA provided for IAP's acquisition of all of JCWS's subsidiaries, including RMS.  It is clear from the

3

record that at the time of the SPA, Johnson Controls knew of Fluor's demands for reimbursement from RMS.

The SPA contained a choice-of-law provision, providing that the contract would be interpreted under New York law. It also contained an indemnification provision, Section 8.3(e). Section 8.3(e) states that,

> [a]fter the Closing, Seller [Johnson Controls] agrees to indemnify and hold harmless Buyer [IAP] and the Company [JCWS], to the extent permitted by applicable law, from and against all demands, claims, actions or causes of action, assessments, losses, damages and liabilities (collectively "Damages"), asserted against or actually incurred by Buyer or the Company as a result of

several actions or claims, listed in Section 8.3(e)(x).[3] The SPA, however, also expressly limits Johnson Control's duty of indemnification as follows: Section 8.3(e) provides, in pertinent part,

> Seller's obligation to indemnify Buyer for any Damages pursuant to this Section 8.3(e) shall be effective and Seller shall be liable only to the extent that . . . written notice of a Buyer Claim in respect of such Damages, specifying in detail the basis therefor and referring to this Section 8.3(e), has been received by Seller on or prior to [March 30, 2007] . . . .[4]

The parties executed the SPA on March 30, 2005.

---

[3] R.251-2 at 55 (SPA).

[4] Id. at 55-56.

4

Prior to closing on the sale, however, IAP and Johnson Controls executed Amendment No. 1 to the SPA. Amendment No. 1 amended Section 8.3(e)(x) "to include indemnity for Damages arising out of or relating to item[] 1[] . . . set forth on Exhibit A to this Amendment, subject to the limitations in Section 8.3(e)."[5] Item 1 in Exhibit A is entitled "RMS AFCAP."[6] It recounts the ongoing dispute between RMS, Fluor and the Air Force ("the Fluor dispute") and states that "[t]he maximum exposure in settling this issue for RMS is approximately $26 million."[7] The parties executed the amendment on February 11, 2005, and closed on the sale on March 30, 2005.

After closing, IAP, as the new owner of RMS, became involved in RMS and Fluor's negotiations with the Air Force. On April 14, 2009, after reaching a partial settlement with the Air Force, IAP requested that Johnson Controls, RMS's former owner, indemnify it. Johnson Controls refused.

IAP and RMS then brought a declaratory judgment action against Fluor, seeking a determination that RMS was not liable for the remainder of Fluor's cost

---

[5] R.1-3 at 4 (Amendment No. 1).

[6] Id. at 7 (Amendment No. 1 Ex. A).

[7] Id. (emphasis added).

5

overruns.  IAP and RMS also brought a claim against Johnson Controls for indemnification under the SPA.  The district court realigned the parties, making Fluor the plaintiff, RMS and IAP the defendants and Johnson Controls a third-party defendant.  The indemnification action between IAP and Johnson Controls was stayed, pending the resolution of the litigation between RMS and Fluor.  RMS and Fluor settled before trial.

IAP and Johnson Controls subsequently filed cross-motions for summary judgment on the indemnification action.  Johnson Controls argued that IAP was not entitled to indemnification for two reasons.  First, it asserted that the SPA's plain language establishes that Johnson Controls only undertook to indemnify IAP, and the claim for which IAP sought indemnification was made against RMS, not IAP.  Second, Johnson Controls submitted that IAP had failed to satisfy Section 8.3(e)'s notice requirements because it did not request indemnification until April 2009.  The district court rejected both of these arguments and determined that the plain language of the SPA, in conjunction with Amendment No. 1, established that Johnson Controls had received the required notice and had a duty to indemnify IAP for losses sustained as a result of the Fluor dispute.

At summary judgment, IAP sought only its fees from settling RMS's dispute

6

with Fluor, including those it incurred before requesting indemnification from Johnson Controls.  IAP did not seek fees incurred in the present action against Johnson Controls for indemnification.  The district court awarded IAP attorneys' fees, determining that, under New York law, broadly worded indemnification agreements, like Section 8.3(e), cover attorneys' fees.  The district court then appointed a special master to calculate a reasonable fee amount and to determine whether IAP was entitled to costs.

To establish its attorneys' fees, IAP submitted billing invoices, which were billed in quarter-hour, rather than tenth-of-an-hour, increments as required by the district court's initial scheduling order and Local Rule 54.1.  IAP also admits that it failed to file some invoices by the deadline set out in the district court's scheduling order and Local Rule 54.1.[8]

The special master recommended that IAP's attorneys' fees be reduced in three ways:  (1) by disallowing the fees contained in the invoices which were not timely filed in accordance with Local Rule 54; (2) by reducing fees for IAP's failure to submit bills in tenth-of-an-hour increments; and (3) by reducing the fees

---

[8] Local Rule 54.1 governs motions for attorneys' fees.  It provides, among other things: (1) the time for filing a motion for fees, (2) requirements for attorneys' fee records and (3) how to determine fee amounts.  N.D. Fla. Loc. R. 54.1.

requested by ten percent to compensate for duplicative or vague time entries.  The special master also determined that IAP was entitled to costs pursuant to the district court's grant of summary judgment.  After de novo review, the district court adopted the special master's recommendation and awarded IAP $1,882,405.68 in attorneys' fees and $308,804.90 in costs.

Johnson Controls timely appealed, and IAP cross-appealed, challenging only the district court's disallowance of fees which were not timely filed in accordance with Local Rule 54.1 and which were not billed in tenth-of-an-hour increments.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo. Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264 (11th Cir. 2006).  By the parties' agreement, New York law governs the SPA's interpretation.[9]

---

[9] R.251-2 at 62 (SPA); R.1-3 at 6 (Amendment No. 1).

## A.  Indemnification of IAP

It is undisputed that Section 8.3(e) of the SPA is not facially ambiguous; therefore it must be construed according to its plain meaning.  See Bailey v. Fish & Neave, 868 N.E.2d 956, 959 (N.Y. 2007).

Section 8.3(e) governs Johnson Controls' duty to indemnify IAP for specified "Damages."  "Damages" are defined in the agreement as "all demands, claims, actions or causes of action, assessments, losses, damages and liabilities" arising from certain events.[10]  Thus, Section 8.3(e), as amended by Amendment No. 1, provides that "[Johnson Controls] agrees to indemnify and hold harmless [IAP] . . . from and against all . . . losses[] . . . actually incurred by"[11] IAP "arising out of or relating to"[12] the Fluor dispute, for which "[t]he maximum exposure in settling this issue for RMS is approximately $26 million."[13]  It bears emphasis that the parties in amending the SPA's indemnification provision through Amendment

---

[10]  R.251-2 at 55 (SPA).

[11]  Id.

[12]  R.1-3 at 4 (Amendment No. 1).

[13]  Id. at 7.

9

No. 1 explicitly contemplated "settling [the Fluor dispute] <u>for</u> RMS."[14]  Under the amended Section's plain language, IAP is entitled to indemnification from Johnson Controls for the actual losses it sustained because of the Fluor dispute, including those incurred by settling the Fluor dispute "for RMS."[15]

Johnson Controls submits that it does not owe IAP indemnification because RMS, not IAP, had liability as a result of the Fluor dispute.  Although Johnson Controls is correct that only RMS, and not IAP, was liable to Fluor because of the cost overruns associated with the Air Force project, it is incorrect in concluding that this absence of <u>liability</u> relieves it of its duty of indemnification.  Johnson Controls did not undertake to indemnify IAP only for <u>liability</u> incurred as a result of the Fluor dispute.  Rather it agreed to indemnify IAP for a host of damages, including <u>losses actually incurred</u>.

The district court found that IAP suffered actual losses as a result of RMS's litigation and ultimate settlement with Fluor.[16]  At summary judgment, Johnson

---

[14]  <u>Id.</u> (emphasis added).

[15]  <u>Id.</u>

[16]  R.292 at 8.  For example, IAP produced evidence that, in accordance with GAAP, IAP and RMS file consolidated financial statements, in which reductions in RMS's value appear as losses to IAP.  R.251-48 at 2-3.

10

Controls produced no evidence disputing this fact.[17]  Its only argument on appeal

is that because IAP and RMS are separate legal entities, IAP cannot be liable for

RMS's debts.  However, the absence of legal liability does not preclude finding

that IAP suffered actual losses, which the SPA specifically provides for, as a result

of the Fluor dispute.  Indeed, in order to give effect to the parties' agreement,

including Amendment No. 1, we cannot accept Johnson Controls' argument that

IAP is precluded from suffering actual losses as a result of the Fluor dispute

because IAP and RMS are distinct legal entities.  Were this sufficient to preclude

IAP from incurring an actual loss, Amendment No. 1 would be meaningless.

Under New York law, actual loss must be given its "plain and ordinary

meaning."  White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848

N.Y.S.2d 603 (N.Y. 2007).  IAP presented evidence that it suffered real, tangible

losses as a result of the Fluor dispute.  As the district court noted, Johnson

Controls chose not to challenge or rebut this evidence, see R.292 at 8, and so has

forfeited its opportunity to do so.

---

[17]  See R.292 at 8 (noting that Johnson Controls produced no evidence in response to IAP's evidence that it sustained actual losses).

11

However, we note that IAP has incurred actual losses. The shared balance sheet reflects more than mere accounting practices between IAP and RMS; it reflects the reality of the ownership structure whereby IAP funded RMS's settlement with Fluor and the associated attorneys' fees. First, IAP incurred monetary losses by funding RMS's litigation. Second, RMS is IAP's wholly-owned subsidiary; in short, RMS itself is one of IAP's assets. When RMS's net worth was reduced because of expenses incurred in negotiating, litigating and ultimately settling with the Air Force and with Fluor, IAP suffered a cognizable monetary loss--its asset (RMS) was diminished in value.

The SPA as amended by Amendment No. 1 clearly contemplates indemnifying IAP's "settling this issue _for_ RMS."[18] The district court found that, based on uncontroverted evidence, IAP incurred actual losses in doing just that. Thus, the SPA, as amended, covers the losses IAP actually incurred because of the Fluor dispute.

---

[18] R.1-3 at 7 (emphasis added) (Amendment No. 1). We do not require Johnson Controls to indemnify RMS, but rather, in accordance with the terms of Amendment No.1, to indemnify IAP for losses incurred by IAP because of RMS's dispute with Fluor. There is a difference between requiring Johnson Controls to indemnify RMS and requiring it to indemnify IAP for losses that RMS's actions caused IAP to suffer, which was the purpose of Amendment No. 1.

12

## B.  Notice Requirement

One of the prerequisites for obtaining indemnification for damages, as defined in the SPA, is that sufficient notice of the damages be given.  Giving notice of damages does not trigger Johnson Controls' duty to indemnify; rather it preserves IAP's ability to request indemnification later.  Notice of any damages incurred by IAP must be given in accordance with Section 8.3(e), which is the subject of the present dispute.[19]

Section 8.3(e) provides:

[Johnson Controls'] obligation to indemnify [IAP] for any Damages pursuant to this Section 8.3(e) shall be effective and [Johnson Controls] shall be liable only to the extent that . . . written notice of a Buyer Claim in respect of such Damages, specifying in detail the basis therefor and referring to this Section 8.3(e), has been received by [Johnson Controls] on or prior to the date specified by Section 8.3(b) . . . .[20]

Section 8.3(b)(iii) specifies that such notice be given before the closing's second

_____

[19]  A separate notice provision, Section 8.3(h)(i), governs requests for indemnification. As Johnson Controls notes, IAP requested indemnification on April 14, 2009.  Appellant's Br. 49.  Section 8.3(h)(i) only requires that notice be "prompt," and provides that "failure of an indemnified party to give timely notice hereunder shall not affect rights to indemnification hereunder, except and only to the extent that the indemnifying party demonstrates actual material damage caused by such failure."  R.251-2 at 57 (SPA).

[20]  Id. at 55-56.

13

anniversary, March 30, 2007.[21]  Notice will be deemed given if it is in writing and delivered by certain methods.[22]  However, these methods are not exclusive.

The district court found that Section 8.3(e)'s notice requirements were satisfied by Amendment No 1.  We agree.  Amendment No. 1 satisfies the four requirements of Section 8.3(e):  (1) It was written; (2) it specified in detail the basis for the damages claimed; (3) it referred to Section 8.3(e); and (4) it was received by Johnson Controls prior to March 30, 2007.  Moreover, the purpose of the Amendment was to memorialize the Fluor dispute and Johnson Controls' obligation to indemnify IAP for any losses arising from it.  We agree with the district court that, given the language and evident purpose of Amendment No. 1, it "would be an absurd result"[23] to hold that IAP was obligated to give Johnson Controls additional notice of the Fluor dispute and that the dispute was covered by Section 8.3(e)'s indemnification provision.

We cannot accept Johnson Controls' arguments to the contrary.  First,

---

[21]  Id. at 55.

[22]  Id. at 61.  The specified methods are "personally, by telex, telegram, or facsimile transmission, or by registered or certified mail (return receipt requested) or nationally recognized private courier to the other party at the following address for such party (or at such other address as shall be specified by like notice)."  Id.

[23]  R.292 at 7.

14

Section 8.3(e) provides detailed requirements for giving notice of damages. Contrary to Johnson Controls' assertions, that section does not contemplate additional requirements other than those required by the SPA itself. There is no basis for our adding additional requirements to the facially unambiguous notice provision. Second, we cannot agree with Johnson Controls' contention that this interpretation renders portions of the SPA meaningless. As Johnson Controls correctly notes, Amendment No. 1 recites that it is "subject to the limitations in Section 8.3(e)."[24] Finding that Amendment No. 1 satisfied Section 8.3(e)'s notice requirement does not render this language a nullity. Indeed, IAP was still subject to, and met, other requirements under Section 8.3(e), including the prohibition on consequential damages, the threshold amount for Johnson Controls' liability, which the parties do not dispute was met, and a cap on damages.[25]

Amendment No. 1 expressly provided for indemnification arising out of the Fluor dispute, an ongoing event. Indeed, providing notice of this indemnifiable claim is the only conceivable purpose of the amendment. It satisfied the formalities set forth in Section 8.3(e); there was no need for additional notice to be

---

[24]  R.1-3 at 4 (Amendment No. 1).

[25]  R.251-2 at 55-56 (SPA).

15

given.  Therefore, we conclude that IAP gave Johnson Controls sufficient notice and so is entitled to indemnification.

## C.  Indemnification for Attorneys' Fees

Both parties raise claims concerning Local Rule 54.1 and its impact on the district court's determination of the amount of attorneys' fees for which Johnson Controls owed IAP indemnification.[26]  We begin by addressing Johnson Controls'

---

[26]  Local Rule 54.1 reads, in relevant part:

**RULE 54.1 Motions for Attorneys' Fees**

**(A) Time for Filing.**  A motion for an award of attorneys' fees and related nontaxable expenses (not otherwise taxable as costs) shall be filed and served within the time specified in the scheduling order entered in the case and as otherwise provided in Fed. R. Civ. P. 54(d).  The pendency of an appeal from the judgment shall not toll the time for filing the motion.

**(B) Attorneys' Fees Records.**  In any proceeding in which any party is seeking an award of attorneys' fees from the opposing party pursuant to any statute, contract, or law, the party seeking such an award of attorneys' fees shall:

(1) Maintain a complete, separate, and accurate record of time (to the nearest 1/10 of an hour) devoted to the particular action, recorded contemporaneously with the time expended, for each attorney and each specific activity involved in the action (i.e., not just "research" or "conference"); and

(2) File electronically a summary of such time record with the clerk by the fifteenth (15th) day of each month during the pendency of the action, for work done during the preceding month.

(continued...)

16

claim.  Then we address the issue IAP raises on cross-appeal.

### 1. Johnson Controls' Contentions

At summary judgment, IAP sought indemnification for the attorneys' fees it had incurred throughout the Fluor dispute, including those incurred litigating against the Air Force.[27]  However, IAP did not seek recovery for the fees it incurred litigating against Johnson Controls.  The district court entered summary judgment in favor of IAP, holding that Johnson Controls had undertaken to indemnify IAP for attorneys' fees under the SPA.  Johnson Controls now contends

---

[26](...continued)

> (3) If claim will be made for services performed by any person not a member of the bar, a separate time record shall be maintained for each such individual and filed as specified below, together with the hourly rate at which such person is actually reimbursed.

> (4) These records may be filed electronically under seal.  If the attorney does not file these time records under seal, such records will remain unsealed.  Attorney time records will be maintained electronically and will not be included in the electronic case file.  Upon termination of the case or the determination of attorneys' fees, whichever occurs later, all time records in the case will be destroyed.

> (5) Failure to comply with these requirements will result in attorneys' fees being disallowed for the omitted period.

N.D. Fla. Loc. R. 54.1 (citation omitted).

[27]  R.250 at 25.

17

that IAP is not entitled to any attorneys' fees.  We cannot accept this argument.

One preliminary matter deserves our attention.[28]  Prior to summary

judgment, the parties filed a Joint Motion to Bifurcate and Stay Discovery into

Plaintiffs' Attorneys' Fees.[29]  This joint motion asked the district court to

> bifurcate and stay all discovery into attorneys' fees until the questions
> of Defendant's duty to indemnify, Plaintiffs'[30] entitlement to fees,
> and Defendant's ability to challenge the reasonableness of those fees
> have been decided, either on summary judgment or at trial.  Should
> discovery into the fees remain necessary after the foregoing issues
> have been decided, the parties agree that the question of the
> reasonableness of Plaintiffs' attorneys' fees may be resolved through
> briefing to the Court or, if necessary, in a hearing before the Court.[31]

The parties therefore agreed that IAP's entitlement to fees would be addressed on

summary judgment.  In its motion for summary judgment, IAP specifically

asserted its claim to indemnification for fees incurred in actions taken before IAP

---

[28]  Johnson Controls submits only that IAP is not entitled to any fees; it does not renew its previous challenges to the reasonableness of IAP's claimed fees.  Therefore, the only issue that Johnson Controls has raised on appeal is IAP's entitlement to fees.  Second, on appeal, Johnson Controls contends for the first time that IAP cannot recover for attorneys' fees because they are consequential damages, which are disclaimed in Section 8.3(e).  Johnson Controls has forfeited this argument by not raising it in the district court, and we shall not consider it.  Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011) ("It is well settled that issues not raised in the district court in the first instance are forfeited.").

[29]  R.244.

[30]  At the time the joint motion was made, IAP and RMS both were proceeding against Johnson Controls.  Ultimately only IAP was awarded summary judgment.

[31]  R.244 at 2.

18

requested indemnification, including those incurred in litigating against the Air Force.  Johnson Controls ignored this specific claim at summary judgment. Indeed, it ignored all of IAP's arguments concerning attorneys' fees, relying instead on its more general argument that IAP was not entitled to any indemnification.  However, during the damages portion of the proceeding below, Johnson Controls challenged IAP's entitlement to indemnification for fees incurred prior to its April 14, 2009 request for indemnification.

The special master determined that the issue of whether IAP was entitled to fees incurred prior to its April 14, 2009 indemnification request was not properly before him because it was part of the earlier proceedings:  the inquiry concerning IAP's entitlement to indemnification.[32]  Johnson Controls has not appealed this determination of the special master, which was adopted by the district court. Therefore, it likely has forfeited any argument that the district court's refusal to consider its argument was in error.  See Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011).

However, even if we were to ignore Johnson Controls' forfeiture, we agree that this issue was improperly raised in the second stage of the proceeding that

_____

[32]  R.331 at 5 n.4.

19

was limited to the reasonableness of IAP's claims.  Whether IAP was entitled to attorneys' fees arising out of certain events is properly understood as being part of the earlier entitlement-to-fees inquiry rather than the reasonableness-of-fees inquiry; it is not a mere line item to be considered in calculating fees.  Given IAP's clear request for summary judgment on its entitlement to indemnification for fees, Johnson Controls was on notice that it needed to bring forth its evidence on this issue.  However, Johnson Controls decided neither to acknowledge nor to respond to IAP's claim.  Given these circumstances, we agree with the district court that this issue was not timely raised in the district court, and we shall not consider it on appeal.

We now turn to Johnson Controls' remaining argument concerning IAP's attorneys' fees.[33]  Johnson Controls contends that, because of IAP's admitted failure to comply strictly with the requirements of Local Rule 54.1, IAP should have been denied all recovery for attorneys' fees.  However, because Local Rule 54.1 does not apply to IAP's claim for attorneys' fees as contractual damages

---

[33]  This argument also was not made at summary judgment but this is not a barrier to review.  Because IAP's compliance with Local Rule 54.1 could not be determined until discovery, which was stayed pending the resolution of IAP's motion for summary judgment, Johnson Controls properly addressed this issue in the later reasonableness portion of the proceedings below.

under the SPA, we cannot agree.

The applicability of Local Rule 54.1 is a question of law, which we review de novo. See Bailey v. ERG Enters., LP, 705 F.3d 1311, 1316 (11th Cir. 2013). Local Rule 54.1 applies to "Motions for Attorneys' Fees." N.D. Fla. Loc. R. 54.1. It governs postjudgment motions for prevailing-party fees, and its language tracks Federal Rule of Civil Procedure 54.

By its own terms, it does not apply to IAP's stand-alone claim for attorneys' fees. It is inapplicable because IAP did not request prevailing-party fees. Indeed, it did not seek any attorneys' fees incurred litigating its entitlement to indemnification against Johnson Controls. Rather, IAP's requested fees are contractual damages; its entitlement to fees flows from the SPA rather than its status as a prevailing party in the present litigation.

IAP brought a stand-alone claim for attorneys' fees. "A 'stand-alone' claim for attorneys fees is one that can be brought as an independent claim, such as, for example, a claim brought by an attorney to recover fees from a former client pursuant to a retainer agreement." Carolina Power & Light Co. v. Dynegy Mktg. & Trade, 415 F.3d 354, 360 (4th Cir. 2005). Essentially, a stand-alone claim is found "when a contract provides for an award of attorneys fees or legal costs, not

21

as costs to the prevailing party, but as an element of damages." Id. at 362.  Here, IAP's attorneys' fees are due under the agreement as losses actually incurred, which arose from the Fluor dispute.  They are not the fees incurred litigating against Johnson Controls.

Johnson Controls nevertheless maintains that, because section (B) of Local Rule 54.1 purports to apply "[i]n any proceeding in which any party is seeking an award of attorneys' fees from the opposing party pursuant to any statute, contract, or law," it governs IAP's demand for indemnification of attorneys' fees incurred. We cannot accept this construction of Local Rule 54.1, which is entirely dependent on one phrase in section (B).  First, Local Rule 54.1 must be considered as a whole:  It is expressly limited to motions for attorneys' fees, and its similarity, and direct reference, to Federal Rule of Civil Procedure 54 indicates that it governs only fee petitions submitted by prevailing parties.[34]

Second, the subsection relied on by Johnson Controls applies only to awards

---

[34] Federal Rule of Civil Procedure 54(d)(2) governs "Attorney's Fees" and is a prevailing-party fee rule.  As the 1993 advisory committee's note explains, section (d)(2) "establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as 'costs.'  It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees. . . .  [I]t does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."  Fed. R. Civ. P. 54(d)(2) advisory committee's note (1993).

22

of attorneys' fees from the opposing party in the present action.  N.D. Fla. Loc. R. 54.1(B).  IAP did not seek an award from Johnson Controls as its opposing party in this action.  Rather, it sought to enforce the SPA and Johnson Controls' obligation under it to reimburse IAP for attorneys' fees it had expended in other actions attempting to settle the Fluor dispute for RMS.  In short, IAP requested contract damages, which are wholly independent of IAP's status as a prevailing party in the present action.

The district court therefore erred in finding Local Rule 54.1 applicable to IAP's stand-alone claim for attorneys' fees.  Thus, Johnson Controls' argument that Local Rule 54.1 bars IAP's recovery necessarily fails.[35]

### 2.  IAP's Contentions on Cross-Appeal

Now we turn to IAP's cross-appeal.  IAP seeks reversal of the district court's disallowance of $637,030.41 in fees.  The special master recommended

---

[35] We note that even if Local Rule 54.1 did apply, IAP's noncompliance with the rule would not bar its recovery of attorneys' fees.  Contrary to Johnson Controls' assertions, a district court has discretion to waive or excuse noncompliance with its local rules.  See Quick v. Peoples Bank of Cullman Cnty., 993 F.2d 793, 798-99 (11th Cir. 1993).  Thus, the district court did not abuse its discretion in failing to deny all of IAP's requested fees.  Indeed, Johnson Controls' interpretation of Local Rule 54 to require the total denial of fees is contrary to the district court's discretion.  "[A] compulsory exercise of discretion is not discretion at all."  Id. at 799.

23

that the district court disallow fees in the amount of $578,500 for "its failure to file the invoices with the Court pursuant to the local rules of court"[36] and $58,530.41 for IAP's attorneys' failure to bill in tenth-of-an-hour increments.[37]  IAP objected to these reductions before the district court, reiterating its objection to the application of Local Rule 54.1.  IAP also asked, in the alternative, that the district court exercise its discretion and excuse its noncompliance with the local rule, should it apply.  The district court, after reviewing IAP's objections, accepted the special master's recommendations and, declining to exercise its discretion, disallowed $637,030.41 of IAP's claimed fees.

Under New York law, "[t]he determination of reasonable counsel fees is a matter within the sound discretion of the trial court." Shrauger v. Shrauger, 146 A.D.2d 955, 537 N.Y.S.2d 84, 85 (N.Y. App. Div. 1989).  The only stated basis in the record for the disallowance of these fees is the special master's determination that IAP failed to comply with Local Rule 54.1.  The district court "approved and . . . incorporated by reference" the special master's report and recommendation.[38]

---

[36]  R.331 at 10.

[37]  Id. at 11.

[38]  R.334 at 1.

As we already noted, Local Rule 54.1 does not apply to IAP's stand-alone claim of indemnification for attorneys' fees. Therefore, disallowing indemnification for fees that did not comply with Local Rule 54.1 was a mistake of law. "[A] mistake of law is, by definition, an abuse of discretion." United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997).

Johnson Controls urges this court to affirm the district court's disallowance of IAP's fees on the ground that IAP failed to comply with the district court's initial scheduling order. We decline to do so. The initial scheduling order imposes requirements identical to those contained in Local Rule 54.1. Given the similarities in content and language, it is evident that the order incorporated Local Rule 54.1, to which IAP's stand-alone claim is not subject. We therefore cannot penalize IAP for failing to comply with prevailing-party fee requirements, whether contained in Local Rule 54.1 or in the district court's scheduling order.

Accordingly, we must reverse the district court's disallowance of IAP's attorneys' fees for noncompliance with Local Rule 54.1. On this issue, we remand to the district court with directions to amend its judgment to include the previously disallowed $637,030.41.

25

## D. Indemnification for Costs

IAP sought the costs it incurred in the Fluor dispute in its Amended Complaint.  It prayed "[t]hat this Court award Plaintiff[] recovery for any additional liability, costs, fees, or other obligations resulting from the dispute between RMS and Fluor."[39]  IAP's request for costs also was memorialized in the parties' joint report on their discovery planning meeting.[40]  However, during discovery and in support of its motion for summary judgment, IAP produced no evidence of its costs.  Nor did it request costs in its motion for summary judgment.  Consequently, the district court did not discuss or purport to award costs in its grant of summary judgment.

The district court next appointed a special master to "decide the amount of reasonable fees and costs in accordance with" Local Rule 54 and to "decide whether the Order granting summary judgment (Doc. 292) awarded IAP costs incurred in this dispute with Fluor in addition to the attorneys' fees incurred in this

---

[39] R.224 at 14.

[40] See, e.g., R.216 at 4 (requesting "indemnification from [Johnson Controls] for the settlement payment, and fees and costs incurred in connection with the recently settled Fluor claims, as well as the costs and fees associated with settling the related dispute with the Air Force"); id. at 5 ("IAP seeks approximately $7.2 million as reimbursement for its settlement payment to Fluor, and costs and fees related to reaching that settlement, including costs and fees incurred in the related claim against the Air Force").

26

dispute."[41]  In this phase of the proceedings, IAP produced evidence of its costs.

Johnson Controls reviewed this evidence and produced an expert report opining

on the costs' lack of reasonableness.  Before the special master, Johnson Controls

objected to any award of costs.  The special master rejected its arguments and

found that the district court awarded costs when the district court awarded IAP

indemnification for damages arising out of the Fluor dispute.

Johnson Controls objected to the special master's report to the district court.

The district court rejected these arguments and awarded IAP $308,804.90 in costs.

On appeal, Johnson Controls challenges only the award of costs, not the amount

awarded.  It contends that because IAP did not seek costs at summary judgment,

the district court violated its due process rights by later awarding costs.  We must

disagree.

Whether the SPA provides indemnification for IAP's costs incurred in

settling the Fluor dispute is a matter of law, which we review de novo.  See Natco

Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1193-94 (11th Cir.

2001).  Under New York law, which applies here, broadly worded indemnification

agreements are construed as covering the indemnified party's costs.  See, e.g.,

---

[41]  R.329 at 2.

Gary v. Flair Beverage Corp., 60 A.D.3d 413, 875 N.Y.S.2d 4, 7 (N.Y. App. Div. 2009) (holding that the indemnified party "is also entitled to . . . costs pursuant to the broad language of the indemnification clause" which did not explicitly mention costs); Boyd v. Bethlehem Steel Corp., 247 A.D.2d 864, 668 N.Y.S.2d 817, 818 (N.Y. App. Div. 1998) (finding costs covered "[i]n view of the broad language of the indemnification provision," which provided indemnification for "'any loss or liability'"). Under the SPA's broadly worded indemnification provision, we conclude that IAP was entitled to indemnification of its costs arising from the Fluor dispute as a matter of law.

Johnson Controls is correct that IAP did not seek its costs at summary judgment. However, this failure does not necessarily preclude the district court's later sua sponte grant of summary judgment on that issue. "A district court possesses the power to enter summary judgment sua sponte provided the losing party was on notice that she had to come forward with all of her evidence." Burton v. City of Belle Glade, 178 F.3d 1175, 1203 (11th Cir. 1999) (internal quotation marks omitted). "[S]o long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then

28

granting summary judgment <u>sua</u> <u>sponte</u> is entirely appropriate." <u>Id.</u> at 1204.

Here, the district court's instruction to the special master was to determine whether IAP's entitlement to indemnification also included indemnification for costs. Johnson Controls understood this, as evidenced by its memoranda and briefs to the special master and district court concerning IAP's entitlement to indemnification for costs. Thus, Johnson Controls received notice that the issue of costs was going to be decided.[42] It also was afforded adequate opportunity to produce arguments and evidence in support of its position, which it took. It fully briefed the issue of IAP's entitlement to costs under the SPA's indemnification provision and the reasonableness of costs claimed before both the special master and the district court. Therefore, Johnson Controls received sufficient due process to sustain the district court's <u>sua</u> <u>sponte</u> grant of summary judgment.

IAP was entitled to indemnification for costs as a matter of law; Johnson Controls could only preclude summary judgment by showing a genuine issue of

---

[42] Johnson Controls addressed the issue of costs in its August 8, 2011, Response to Plaintiffs' Opening Brief on Damages. R.316. It is unclear precisely when Johnson Controls was notified that the district court was considering awarding IAP costs. However, Johnson Controls clearly was aware of the court's intention on August 8, 2011; the district court ordered the special master to consider the issue on October 13, 2011, R.329, and the special master decided it on November 28, 2011, R.331. Therefore Johnson Controls had several months of notice prior to the determination of this issue, which is more than "a reasonable time to respond," as required by Federal Rule of Civil Procedure 56(f).

material fact with respect to the reasonableness of IAP's costs.  However, Johnson Controls has not appealed the district court's determination that IAP's asserted costs, which were supported by evidence, were reasonable.  Instead it rests its entire argument on the alleged procedural impropriety of the district court's grant of summary judgment.  As we have noted earlier, because Johnson Controls received adequate opportunity to litigate the matter, we affirm the district court's sua sponte grant of summary judgment on the issue of indemnification for costs.

## Conclusion

For the foregoing reasons, we affirm in part and reverse in part the judgment of the district court.

**AFFIRMED IN PART AND REVERSED IN PART**

JORDAN, Circuit Judge, dissenting:

My view of this case differs from that of my colleagues. I therefore respectfully dissent.

1. The majority holds that Johnson Controls must indemnify the losses incurred by RMS, a non-indemnitee/second-tier subsidiary of IAP.[1] In my opinion, this holding runs counter to the language of § 8.3(e) of the Stock Purchase Agreement, which limits indemnification to the "Buyer and the Company," i.e., IAP and IAPWS respectively.[2]

First, § 8.3(e) does not grant indemnification to any subsidiary of IAPWS. Because New York law requires that an indemnity provision be "strictly construed to avoid reading into it a duty which the parties did not intend to be assumed," Hooper Assoc., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989), I

---

[1] As defined in the Stock Purchase Agreement, "Buyer" refers to IAP and "Company" refers to Johnson Controls World Services ("JCWS"). See Stock Purchase Agreement [D.E. 251-2] at 1. After the sale of its stock to IAP, JCWS was renamed as IAP World Services ("IAPWS"). See Plaintiffs' Redacted Statement of Material Undisputed Facts [D.E. 251] at ¶¶ 1, 2; Johnson Controls Answer [D.E. 241] at ¶ 2, 23. Thereafter, RMS remained a wholly-owned subsidiary of IAPWS, which was a wholly-owned subsidiary of IAP. See D.E. 241 at ¶ 1, 23; D.E. 251 at ¶ 1.

[2] The majority says that Johnson Controls, by failing to challenge the figures put forth by IAP, has forfeited its challenge. See Maj. Op. at 15. I disagree. Johnson Controls may not have contested the sums incurred by RMS, but it steadfastly denied that § 8.3(e) required indemnification. See Johnson Control's Response to Motion for Summary Judgement [D.E. 270] at 20 ("[A]pplying the limitations in Section 8.3(e) . . . means that any duty to indemnify remains limited to Damages asserted or actually incurred by IAP or IAPWS. Here, the undisputed evidence is that the only entity whom Fluor asserted any Damages . . . was RMS.").

31

do not think § 8.3(e) extends to subsidiaries.  See, e.g., Dana Corp. v. Celotex Asbestos Settlement Trust, 251 F.3d 1107, 1115 (6th Cir. 2001) (affirming summary judgment under Ohio law in favor of seller, which refused to indemnify losses incurred by former subsidiary, because indemnity provision of stock purchase agreement only indemnified buyer's own losses incurred as a result of subsidiary's torts).  Reading § 8.3(e) in this limited manner is consistent with other provisions in the stock purchase agreement, which expressly extend indemnification rights to subsidiaries in other scenarios.  See Stock Purchase Agreement [D.E. 251-2] at § 4.2(a) ("Seller shall be responsible for and pay, reimburse, indemnify and hold harmless each of Buyer, the Company and each Subsidiary [for certain taxes]."); § 4.3 ("Seller shall reimburse, indemnify and hold harmless each of the Buyer, the Company and each Subsidiary for [taxes arising from refunds or credits]."); § 5.15(f) ("Seller shall indemnify and hold Buyer, the Company and any of their respective Subsidiaries harmless against any cost, liability or expense to the extent related to a complete or partial withdrawal . . . from any Multiemployer Plan."); and § 9.2 ("Seller shall fully indemnify Buyer, the Company and its Subsidiaries with respect [to costs related to an employee benefits plan].").

32

Second, the parties' negotiations to the amendment to § 8.3(e) support a strict reading of § 8.3(e).  IAP's initial draft of the amendment requested the inclusion of subsidiaries as indemnitees.  See Meyers Letter dated February 8, 2005 [D.E. 281-5] at 1 ("Seller agree[s] to indemnify and hold harmless Buyer, the Company and their respective Subsidiaries from and against all Damages arising out of or relating to any of the matters set forth on Exhibit A [which included the Fluor dispute].") (emphasis added).  Johnson Controls, however, rejected this increased responsibility, see McCarty Letter dated February 9, 2005 [D.E. 282-6] at 3, and the parties ended up agreeing to terms "subject to the limitations in [§] 8.3(e)," notably sans "subsidiary."  Like the Sixth Circuit in a similar case, I think that the drafting history makes a difference.  See Dana Corp., 251 F.3d at 1114 ("Dana did not, however, agree to indemnify S&K [the subsidiary] for its liabilities as evidenced by a prior draft which provided as much, but was rejected.").

Third, in ruling that the losses incurred by a second-tier subsidiary are actual losses of the parent solely because the affiliated entities filed consolidated financial statements, the majority conflates an accounting loss with an actual loss. See McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 145 (E.D.N.Y. 2009)

33

(under New York law, the "reporting of consolidated results of such subsidiaries in public filings . . . are insufficient without more, as a matter of law, to eviscerate the presumption of corporate separateness").  The majority says that a loss incurred by a second-tier subsidiary constitutes an identical loss to the parent because a subsidiary is an asset of the parent.  See Maj. Op. at 12 ("[I]n short, RMS itself is one of IAP's assets.").  New York corporate law, however, rejects such an assertion.  See Connecticut Gen. Life Ins. Co. v. Superintendent of Ins., 176 N.E.2d 63, 66-67 (N.Y. 1961) ("[T]he general rule in this State [is] that in no legal sense can . . . the business of a subsidiary corporation be said to be that of a parent.") (internal citations omitted).  Legally, only the shares of a subsidiary may be considered an asset of the parent.  See Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest.  A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary") (internal citations omitted).  See also JPMorgan Chase Bank, N.A. v. Malarkey, 65

34

A.D.3d 718, 721 (N.Y. App. Div. 2009) ("[a] corporate parent which owns the shares of a subsidiary does not . . . own or have legal title to the assets of the subsidiary") (quoting <u>Dole Food Co.</u>, 538 U.S. at 475). IAP has never claimed a diminution in value of the <u>shares</u> of RMS due to the Fluor dispute, so it has suffered no actual loss. In any event, § 8.3(e) "expressly exclude[s] consequential damages," such as the diminution of a second-tier subsidiary's share price.

2. Unlike the majority, I don't think that an amendment to the stock purchase agreement can, by itself, satisfy the notice required by that agreement. The text of the amendment makes its terms subject to the limitations originally specified in § 8.3(e), including the requirement to provide timely notice of an indemnification obligation. Saying that § 8.3(e), as amended, satisfies its own notice provision does not make much sense to me, and would impermissibly render the distinct notice requirement of § 8.3(e) "mere surplusage," a result frowned upon by New York law. See <u>FCI Group, Inc. v. City of New York</u>, 862 N.Y.S.2d 352, 356 (N.Y. App. Div. 2008) (rejecting contract interpretation that would render a provision "mere surplusage").

35

Assuming that the amended § 8.3(e) could be a legally effective and sufficient vehicle for providing notice, and assuming that a second-tier subsidiary's loss could be deemed a direct loss to the parent, the effective date of the amendment pre-dated any putative loss suffered by IAP, and therefore constituted ineffective notice. Under New York law, a right to indemnification "does not accrue until the indemnified party has made a payment, or actually suffered a loss." Pfizer, Inc. v. Stryker Corp., 348 F. Supp. 2d 131, 150 (S.D.N.Y. 2004) (applying New York law). As of the effective date of the amendment – February 11, 2005 – RMS had not "actually incurred" a loss. See Plaintiffs' Redacted Statement of Material Undisputed Facts [D.E. 251] at ¶ 60. At the earliest, Fluor asserted its claim against RMS (for roughly $10 million) on February 2, 2009. Shortly thereafter, RMS settled with Fluor for $4.4 million. Therefore, even under the majority's view of subsidiary liability, IAP did not incur a loss (via RMS' payment of the settlement) until sometime in 2009 – nearly four years after the amendment was signed. [3]

---

[3] The majority also concludes that IAP's direct expenditures in litigating the Fluor dispute were an indemnifiable loss. See Maj. Op. at 11. I'm not so sure. First, before an indemnification right accrues, § 8.3(e) requires that the "Damages" incurred must exceed the "Threshold Amount," i.e., $2 million. Second, as noted above, under New York law the right of IAP to indemnification would only accrue once it had actually "made a payment, or actually suffered a loss." See Pfizer, 348 F. Supp. 2d at 150. As of February 11, 2005, IAP did not even own the stock of RMS and therefore could not have reported any Fluor-related expenses incurred by RMS on its consolidated financial statement. See Plaintiff's Redacted Statement of Material

(continued...)

36

In order for the majority's reasoning to hold, we must assume that the 2005 amendment sufficiently specified a loss amount that, itself, only became fixed in 2009. Although the principles of special relativity may provide that "past" and "future" events are equally discernible as mere points set in a spacetime continuum,[4] the laws of New York are not so availing – no indemnification obligation exists "unless and until an actual loss has been sustained." McCabe v. Queensboro Farm Products, Inc., 239 N.E.2d 340, 342 (N.Y. 1968). See also Pfizer, 348 F. Supp. 2d at 150 ("To assert a claim under a loss or liability

_____

(...continued)
Undisputed Facts [D.E. 251] at ¶ 3 ("On March 30, 2005, IAP purchased all of the stock of JCWS, including all of the stock for RMS."). It is highly unlikely that IAP would have expended any money (and certainly not $2 million) on litigation for an entity that it did not yet even own. There is, at the very least, this disputed issue of material fact: whether, as of February, 11, 2005, IAP had spent any money on RMS' Fluor-related legal fees and whether those expenses, if any, exceeded the $2 million threshold amount to permit IAP to assert an indemnification right at that time. Third, the indemnification provision "expressly exclude[d] consequential damages." "In general, the precise demarcation between direct and consequential damages is a question of fact, and the commercial context in which a contract is made is of substantial importance in determining whether particular items of damages will fall into one category or the other." Am. Elec. Power Co., Inc. v. Westinghouse Elec. Corp., 418 F. Supp. 435, 459 (S.D.N.Y. 1976) (applying New York law). See also Roneker v. Kenworth Truck Co., 944 F. Supp. 179, 186 (W.D.N.Y. 1996). Moreover, New York courts have ruled that indemnification provisions, absent express language, do not include legal fees expended by an indemnitee in asserting an otherwise indemnifiable claim. See Gorman v. Kings Mercantile Co., 231 N.Y.S.2d 642, 644 (N.Y. Sup. Ct. 1962); Robbins v. Melbrook Realty Co., 213 N.Y.S.2d 403, 407 (N.Y. Sup. Ct. 1961). Here, § 8.3(e) does not expressly indemnify any "costs," "expenses," or "fees." Because there are genuine issues of material fact regarding the parties' intended disposition of such expenses and whether such expenses fall under the exclusion for consequential damages, summary judgment was improper.

[4] Albert Einstein, Relativity: The Special and General Theory 65-68 (trans. Robert Lawson, Henry Holt and Co.) (1920) (discussing Minkowski spacetime).

37

indemnification agreement, a party must establish that the amount claimed is fixed."); Goodridge v. Harvey Group, Inc., 778 F. Supp. 115, 133 (S.D.N.Y. 1991) ("It is established under New York law that agreements to indemnify against liability become enforceable when the liability is fixed"); Martinez v. Fiore, 454 N.Y.S.2d 475, 475 (N.Y. App. Div. 1982) ("a party seeking indemnity must be held liable to the plaintiff before he can recover over from a third party").

At best, the amendment only vaguely suggests a potential claim of an unknown amount to be made at some unknown future point in time: "The maximum exposure in settling this issue for RMS is approximately $26 million. RMS has not paid Fluor for the cost overruns and has not recognized cost/revenue on these costs." See Exhibit A to Amendment No. 1 to Stock Purchase Agreement [D.E. 251-3] at ¶ 1. As of February 11, 2005, there was no loss that had been "actually incurred" by IAP or RMS.